I'm Robert Jobe and I'm appearing today on behalf of Mario Montes-Lopez, also known as Mario Morales-Obrego. This is the second time this case has been here in the Court of Appeals. In this particular instance, the petitioner, when he went to his hearing on the merits, he was just 19 years old. According to his asylum application, he had zero, no formal education whatsoever. He gets to court and his lawyer, a lawyer who had entered an appearance, a lawyer who had retained, is absent. The lawyer had given him a letter dated 11 days before the hearing saying that he had been suspended and asking the judge for a postponement. Rather than attempting to contact the lawyer and find out when did you notify this client of your suspension, why are you making this request so late, the judge went on the record and started asking questions to this unrepresented individual. And he did so, frankly, in my position, he did so in a very belligerent way. He browbeat the kid. He browbeat him, yeah. In your view. In my opinion, he did. Especially when I take into account the kid, he's a new arrival here in the country, he has no education at all, he's a young kid, he's 19 years old. And the judge doesn't say, are you lying to me? He says, I think you're lying to me. And, you know, the kid, you know, probably this may well be the first thing. Acquiesces at some point. Acquiesces at some point. But, you know, this is what bothers me about that, Your Honor, is that if he had a lawyer there, because throughout this whole dialogue, you know, he says, oh, I'm sorry, Your Honor, I was confused, I'm nervous. If he had a lawyer there, the lawyer would have attempted to rehabilitate him. And the lawyer would have said, you know, done some redirect after the judge had done his thing, and the lawyer would have asked him, you know, you previously said you were nervous, you said this was a mistake, and then you said it was a lie. Well, which was it? Which is it? But because he didn't have a lawyer, and the judge was browbeating him like this, he never had the opportunity to do that. And so, in my opinion, the whole idea that he lied, that statement that the judge elicited, that itself stems from the denial of the right to counsel in this case. I mean, I go back to what the judge should have done in this case. And in my opinion, the judge, given a letter like this from a lawyer who had been suspended, he should have got that person on the phone and began asking that individual some very serious questions about, well, when were you suspended, when did you inform your clients of your suspension, why didn't you inform the court earlier of your suspension so that we knew that this was coming? The judge did none of that. And instead, he put the whole burden here on this uneducated alien who's appearing without counsel. You know, we asked the court to take judicial notice of the state bar records for this particular individual. And I went and I looked this guy up again last night, and he's since been disbarred. And ironically, the reason for his disbarment was for failing to inform his clients that he had been suspended from the practice of law. Pretty much that says it all, in my opinion. You're dealing with a lawyer who's disbarred for not telling his clients that he was suspended. He abandons his client at the last minute. Poor client gets in there. He's forced to, you know, fend for himself with a hostile judge. And obviously, he just didn't fare very well. In our view, this was a classic example of where the judge should have done more to determine the facts before he denied this continuance. And by failing to do so, he abused his discretion, and he denied this young individual his right to counsel. What would have a lawyer, a lawyer who had not been disbarred or suspended, have been able to introduce to substantiate an asylum claim, especially based on political opinions about gang exceptions? I think, honestly, there's quite a bit a lawyer could have done. I'm not sure that this particular guy would have done much. But the theory that I think has the most credence right now is that people who, even if he lacks a past persecution, even if he couldn't show that, individuals from these Central American countries, Salvador, Guatemala, Honduras, who are returning from the United States, they're the first people that the gangs target. And a real lawyer would have gone in and tried to formulate a social group that said that, you know, the Salvadorans who have resided in the United States for some period of time, who are being forcibly returned, that's a social group because the gangs believe that those are the individuals that have the money, because they've been working in the U.S. Has there been any agency decisions granted based on this claim related to gang resistance? Not published cases, but, honestly, we win gang cases all the time. And the trick always is about how is the unaccounted of. You know, you need to link the threat to one of the five protected grounds. And oftentimes that's done by trying to link it to family membership. That's the most common way. Other times it's done by showing that the gangs have a particular animus against this person because of religion. But then there are other social group formulations that might well work. And the one that I'm describing about returnees is one that is an open question. That hasn't been decided? It hasn't been decided yet. But, you know, whenever we present one of these cases, we pull in the experts. The experts testify that returnees are the highest target for gangs, and they're visible throughout the country. People know when people are returning from abroad. So I think there was a viable theory to be presented here. It's just, you know, this poor kid fending for himself. The entire mayor hearing is 10 pages long. The judge didn't explore anything. He really didn't make any serious effort to develop this guy's claim. His problem is he didn't find you soon enough because he wouldn't have had you at the time. His application had been filed with still another previous counsel who dropped out. And the application that was filed didn't espouse the theory that you've articulated, which seems to me would have had more traction. It espoused a theory that seemed to me was pretty much a dead end. The kind of I tried to avoid being recruited by gang arguments just don't win. Probably a losing argument. So there we get we face the issue of prejudice, which has two aspects. One, is there an issue of prejudice? And second, and I understand there's a position that prejudice isn't required. Right. But we can't presume that they're going to get one of the best immigration lawyers in the country. He's got who he's got. And he had articulated the arguments, and those didn't seem like winners. So where's the prejudice? Let me first address that first question about whether prejudice needs to be shown. And, again, that's an open question. But it seems clear to me, at least, that this court presumes prejudice under certain circumstances. It presumes prejudice when a lawyer fails to file a timely appeal. It presumes prejudice when an attorney fails to file an appellate brief. It presumes prejudice where an attorney files a boilerplate brief. How could it not presume prejudice when a lawyer completely fails to appear? So at a minimum, I think the Ninth Circuit's case law requires a presumption of prejudice, which didn't happen here. There was no presumption. But even if we have to establish prejudice, again, I mean, I look at some of these cases where prejudice was found. And it's all about, well, could the case have been presented in a better fashion? And without a doubt here, I mean, given that the record is 10, you know, the merits hearing is 10 pages long, the judge asked a handful of questions, there's no question the case could have been presented in a better fashion. And the mere fact that the application itself was very brief, obviously even Otto Pena, he wasn't going to be limited to only those things that were in the application.  So it's an open question as to whether that would have happened. Do you want to save your remaining time for rebuttal? Yes, thank you, Your Honor. May it please the Court. My name is Craig Newell on behalf of the Attorney General. The Court should deny this petition for review because the immigration judge properly exercised his discretion in denying Mr. Morales' continuous request, and he consequently did not violate his statutory right to counsel. Because of Mr. Morales' lack of candor with the immigration judge, the immigration judge was well within his discretion in finding no good cause for further postponing his proceedings. As an initial matter, we need to look back at the procedural history of this case prior to we reach that merits hearing where his attorney, Otto Pena, failed to show up. Well, you can't really use the history about how long the case took to get to court to determine whether at this particular instance the judge denied his right to counsel, can you? As a general matter, no. But in some circumstance, there are a couple things from the history. You're right. You can't just say, oh, it's been going on two years. Yes, you can't just import that in and say the continuance was a good denial. The denial was proper. But there are what you see from this procedural is that he changed his lawyer twice. He was given two continuances to do so. After the second continuance, he was warned by this immigration judge, I'm not giving you any more continuances. And so it shows that there's not a deprivation of his statutory right to counsel. It actually shows that he... Well, do you think he set out to hire an attorney who was going to be suspended from the bar and not be able to appear? No, no. And I have a really hard time attributing to the petitioner anything that suggests a deliberate effort to delay. Frankly, he didn't want to be handed around from attorney to attorney. It looks like the first one dropped him because she wanted to be paid more and the second guy got suspended. I think he had a lot of bad luck with his retention of his counsel. And I think that is helpful. That occurs to many aliens and it's unfortunate. And what it represents, though, is that it shows that this statutory right to counsel is not the same thing as a Sixth Amendment right to counsel in criminal proceedings. It's a right to obtain your counsel at your own expense and it is your duty to get a counsel, to secure counsel that's going to show up for you. Here's a guy who shows up on the day of the hearing with a letter from his lawyer saying, I can't be there with you because I just got suspended. Can you get it continued for three more months? What's he supposed to do?     I'm not going to get you suspended. It's a right to counsel. Oh, I admittedly don't dispute that. This former attorney of I don't want to say it this way, but it keeps coming to my head. He, Otto Pena, threw Mr. Morales to the wolves of the Immigration Court. And, but what we have here is to evaluate the merits of this denial, the continuance, is we need to look at what was its basis. Its basis was that when the immigration judge started asking him questions about this letter, he provided evasive testimony and gave conflicting testimony about when he received the letter and yes, the immigration judge comes across as annoyed in the record, but I think it's a seven-seven. Do you disagree with the characterization of browbeating? It was a pretty tough Q&A. Right, but an alien does not have a right to an idyllic experience in immigration, Corey. I think we can stipulate that this experience is less than idyllic. But for Judge Clifton to say it was a pretty tough Q&A, I think it was probably a pretty tough Q&A. This guy would have said anything the judge wanted to hear. Well, I, he was put into a predicament. And this predicament was not caused, you cannot lay the blame on the immigration judge. But can you blame the petitioner? The guy that should be blamed is the guy that threw him to the wolves. But we can't blame him. I mean, he's been disbarred. Right. We could blame him if this, and this I think ties into the prejudice question. This case has been crafted as the issue is there's a violation of Mr. Morales' statutory right to counsel. It could have, based on the facts here, colorably been crafted as ineffective assistance to counsel claim by Mr. Pena. Mr. Pena, if you take Mr. Morales' word, either learned of this a day or a week or two weeks before the hearing when he was suspended five months ago, he doesn't bother showing up, he doesn't bother showing the immigration judge. And if it was, if it was tailored as an ineffective assistance to counsel claim, this Court would not be presented with the question of whether or not prejudice needs to be shown. Ineffective assistance to counsel claims are procedural due process claims where you need to show both error and prejudice. There is this narrow opening under a violation of a statutory right to counsel to argue that no prejudice needs to be shown. But this is, but that argument is based on, is based on improper or illogical reasoning that is conflating the Sixth Amendment. Alito, we do have a grant in the Sixth Amendment, but there is a clear body of case law in the criminal context where it's the Sixth Amendment where if it's, if counsel doesn't do something, counsel doesn't appear, appointment of counsel is not permitted, that's the end of it. You don't go on to speculate what would have happened after that. The logic is that you don't know what would have happened. Right. Now, as you point out, ineffective assistance to counsel in this context is not based in the Sixth Amendment. But why isn't the logical sequence the same? You don't know what would have happened if he had been allowed to appear with counsel. Your Honor, the logical sequence is not the same because the constitutional basis of these two issues is not the same. With the Sixth Amendment, you have a specific guarantee to a Sixth Amendment, to an attorney in a criminal proceeding. It is fundamental, it's unalienable, but when we're talking about the right to counsel in a civil immigration deportation proceeding, it is grounded in the statute and it's grounded in the due process guarantee of the Fifth Amendment, which is your guarantee to a fundamentally fair hearing, a right to be heard. And fundamental fairness to resolve the issue of fundamental fairness. I'm not sure there would be a difference in the Sixth Amendment criminal context, ineffective assistance of counsel. And, you know, we live with it all the time. You fortunately don't. But Strickland requires demonstration of prejudice. So even in the criminal context, ineffective assistance of counsel requires showing prejudice. Right. Denial of counsel does not. We don't go that road. And I have to believe it's because the inference to be drawn is that if counsel isn't there, you simply don't know what would have happened. Whatever the logic is, in the criminal context, ineffective assistance of counsel requires proof of prejudice, denial of counsel does not. Why shouldn't that same structure apply here? I think because in the immigration context, the statutory right to counsel is one of many procedural safeguards so that you get a fundamentally fair hearing. It always comes down to fundamental fairness, which always requires a showing of error and prejudice. It's such as if you take, I think, of something that's even more necessary to have a fundamentally fair hearing than having your attorney there is having an impartial immigration judge. An impartial immigration judge, if someone raises an immigration judge bias claim, there is always a requirement for that alien to show prejudice. And the line of cases that Mr. Job talked about where this Court presumed prejudice, those all at bottom had to do with the deprivation of judicial review, which I think goes to a Supreme Court Mendoza-Lopez case, I believe. But they all relate to an alien being deprived judicial review, and that's where that prejudice presumption comes in. But here, I go back and always think of, well, if you're claiming your immigration judge was biased against you, he would have denied anything that you, you know, deported you no matter what you said, you still would have had to show prejudice. Once this immigration judge got this guy to say he was lying, he was cooked. There was nothing he was going to do to win that case. But the case- Fundamentally fair? The case, it is because he cannot show prejudice. He's claiming that he'd be persecuted by the gangs in El Salvador, and that has never been held to be a valid asylum claim under a particular social group theory or a political opinion theory. And the comment Mr. Job made about tailoring it differently to say that, you know, they're returning El Salvador and saving more money so they're more likely to be targeted, I know there's this, I can't remember the name of the case, but there's a Ninth Circuit precedent opinion about people who claimed asylum, they were returning to Mexico and would be viewed as affluent. There was a board decision, AME, about affluent Guatemalans, and that was not held to be a particular social group. So I notice my time has run out, and I thank you again for- Thank you for the argument. For the government's argument. If the Board has other questions, I don't have any. Apparently not. We thank you. We thank both counsel for the helpful arguments. The case just argued is submitted. We will be returning in a few minutes to have Q&A, but we hope not browbeating with the student visitors today. For those that may not have been here before, it's a public courtroom. Everybody's invited to stay, but we do not discuss any of the cases that have been argued, so there's no point in people who are here for those cases to hang around to hope you'll learn something. You won't. With that, we are finished with today's argument calendar, and we are adjourned.
judges: Collins, Clifton, Murguia